**5**

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Suite 200
Bakersfield, California 93309
Telephone:  (661) 395-1000
Facsimile:  (661) 326-0418
Email: jeaton@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>J & D WILSON AND SONS DAIRY,<br><br>Debtor-in-Possession. | Case No.  14-10588-B-11<br><br>Chapter  11<br><br>DC No.  KDG-1<br><br>Emergency Hearing Date: February 12, 2014<br>Emergency Hearing Time:   11:30 a.m.<br>Final Hearing Date:  To be set<br>Final Hearing Time: To be set<br>Place:  United States Bankruptcy Court<br>        2500 Tulare Street, Fifth Floor<br>        Department B, Courtroom 12<br>        Fresno, California<br>Judge: Honorable W. Richard Lee |

**MOTION TO USE CASH COLLATERAL
AND GRANT ADEQUATE PROTECTION**

**MOTION**

J & D WILSON AND SONS DAIRY, a California general partnership, Debtor and Debtor-in-Possession in the above-referenced case ("Debtor"), respectfully moves the court for an order authorizing it to use "cash collateral" in the form of cash on hand, money on deposit, milk and cull proceeds, and feed ("the Cash Collateral"), and to grant adequate protection to secured creditors asserting an interest in the Cash Collateral.  In support of this motion (the "Motion"), Debtor represents the following:

///

///

## JURISDICTION AND VENUE

Debtor commenced this Chapter 11 case by filing its Voluntary Petition under Chapter 11 of the Code on February 7, 2014. There is no Chapter 11 trustee and Debtor is also a Debtor-in-Possession.

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). These matters have been referred to the Court by United States District Court for the Eastern District of California according to General Orders 182 and 223.

2. Venue is properly in this Court pursuant to 28 U.S.C. § 1409(a).

## LEGAL BASIS FOR MOTION

3. In accordance with 11 U.S.C. § 363(b) & (c), Rules 9014, 4001(b), 2002(a)(2) of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Rule 4001-1(c) & 9014-1(f)(4), Debtor seeks an order of the Court authorizing the use of the Cash Collateral, and to grant adequate protection to secured creditors asserting an interest in the cash collateral.

## FACTUAL BASIS FOR MOTION

4. Debtor was formed on January 1, 2001. The partners of Debtor are James L. Wilson (25%) and Darla Wilson (25%) and Cornelius Vanderham and Eleanor Vanderham as trustees of the Vanderham Family Trust, dated March 17, 1994 (50%). James L. Wilson manages the day-to-day operation of the dairy.

5. Debtor is engaged in a dairy business in Fresno County, California. Debtor's primary assets are real estate, dairy and farming equipment, and livestock. Debtor owns about 3,385 animals including milk cows, dry cows, heifers, calves, and bulls. Debtor currently employs about 29 people, including 4 insiders.

6. Debtor's mortgage is held by Farm Credit West, FLCA ("Farm Credit"). Before filing for relief under Chapter 11, Debtor's dairy operations were financed primarily by Wells Fargo Bank, N.A., a national banking association ("Wells Fargo"). Debts to Wells Fargo are secured by a security interest in Debtor's personal property. A copy of the UCC-1 Financing Statement filed with the California Secretary of State by Wells Fargo is included in

the *Exhibits to Motion to Use Cash Collateral and Grant Adequate Protection* ("Exhibits") as Exhibit "B."

      7.      The dairy industry has faced significant economic challenges in the last several years. Volatility in feed costs and milk prices has decreased profitability for milk producers over several years. Debtor's reduced net income has caused Debtor to fall behind in payments to its creditors. Furthermore, Debtor and Wells Fargo have entered several short-term forbearance agreements over the last year that have required the repayment of a large amount of the principal debt to the detriment of the overall financial health of Debtor's operations. Debtor now needs to take a holistic review of its business and financial position. Therefore, Debtor filed this Chapter 11 case in order to continue the operation of its dairy and reorganize its business and financial affairs.

      8.      Debtor's "Cash Collateral" consists of the following:
          a.     money on deposit;
          b.     cash on hand;
          c.     milk proceeds;
          d.     cull proceeds; and
          e.     feed.

Based on the loan and security documents, Debtor believes that Wells Fargo has a blanket lien against the Cash Collateral and other personal property owned by Debtor. Based on Prepetition Security Documents, loan statements, and the representations of Wells Fargo, Debtor believes that the debt owed to Wells Fargo is $6,375,692.16.

      9.      Debtor is negotiating a stipulation with Wells Fargo for use of Cash Collateral and to grant adequate protection ("the Stipulation"). Under the Stipulation, Wells Fargo would agree to allow Debtor the use of cash collateral and Debtor would agree to (a) provide Wells Fargo the adequate protection indicated in the Stipulation, and (b) report its use of cash collateral to Wells Fargo. A copy of the Stipulation, if finalized before the hearing, will be filed in support of this Motion.

      10.     Based upon Debtor's records and a search of the records on file with the California Secretary of State's office, B & L Farms filed a UCC-1 financing statement against Debtor on May 1, 2009, asserting Dairy Cattle Supply Lien under Food and Agricultural Code

section 57402. The lien has been paid; however, a release has not been recorded. Therefore, Debtor disputes the validity of the Dairy Supply Lien filed by B & L Farms.

### AMOUNT OF CASH COLLATERAL USE SOUGHT BY DEBTOR

11.     Debtor expects to move quickly in proposing a plan of reorganization, but Debtor cannot determine with certainty the timetable for filing a plan of reorganization. In the interim, Debtor seeks the Court's authorization to use Cash Collateral from the petition date through the date of confirmation of the Debtor's Plan of Reorganization. However, to avoid immediate and irreparable harm, pending a final hearing on the Motion, Debtor requests interim authorization to use cash collateral on a semi-monthly basis as set forth in the budget attached as Exhibit "A" to the Exhibits (the "Budget"). In the alternative, Debtor seeks the Court's approval of the Stipulation (if filed) and authorization to use cash collateral as provided therein. Debtor requests interim authorization to use cash collateral on a semi-monthly basis as set forth in the Budget within a 10% variance. Debtor requests interim authorization to use between $636,390.00 and $704,167.00 per two-week period from February 7, 2014, through a final hearing on the Motion as described in the Budget. Debtor will continue to seek the consensual use of Cash Collateral after that initial period, and budgets will be proposed by Debtor through the date of confirmation of the Debtor's Plan of Reorganization.

12.     The immediate and irreparable harm that will befall debtor if it does not obtain the use of Cash Collateral is that (a) Debtor will be unable to feed and care for the 3,385 animals under its care, (b) Debtor will be unable to pay its employees, (c) Debtor will be unable to pay its utility bills, all of which would cause immediate crises to Debtor's employees and animals, and effectively shut Debtor down. Unmilked dairy cows quickly cease to produce milk, and skilled employees are hard to replace. Each item on the Budget was carefully considered and deemed by Debtor's principals to be necessary to Debtor's continued operation.

### ADEQUATE PROTECTION OFFERED BY DEBTOR

13.     Debtor will provide Wells Fargo with adequate protection (as may be further described in the Stipulation), including:

a. caring for and maintaining the secured parities' collateral,

b. granting Wells Fargo a replacement lien on Debtor's post-petition property of the same type and nature as against Debtor's prepetition property to the extent the use of cash collateral results in a decrease in value of Wells Fargo's interest in its collateral,

c. making monthly interest-only adequate-protection payments to Wells Fargo at the non-default contractual interest rate in the amount of about $27,894.00; and

e. providing monthly financial reports to Wells Fargo, and allowing reasonable inspection of its operations;

## PRAYER FOR RELIEF

**WHEREFORE**, Debtor prays for an order:

1. Granting the Motion on an interim basis pending a final hearing;
2. Approving the Budget and authorizing Debtor to use Cash Collateral as provided therein with a 10% variance on an interim basis pending a final hearing;
3. Authorizing Debtor to use Cash Collateral with a 10% variance after a final hearing through confirmation of a plan of reorganization or further order of the court limiting use of Cash Collateral;
4. Approving the Stipulation (if filed);
5. Granting adequate protection to secured creditors as described above (and/or the Stipulation); and
6. For such other and further relief as is just and proper.

Date: February 10, 2014

        KLEIN, DeNATALE, GOLDNER,
        COOPER, ROSENLIEB & KIMBALL, LLP

By /s/ Jacob L. Eaton
JACOB L. EATON
Proposed Attorneys for Debtor-in-Possession