1  KEVIN G. LITTLE, SBN 149818
   MICHELLE L. TOSTENRUDE, SBN 290121
2  ATTORNEYS AT LAW
   1099 E. Champlain Drive, No. A-124
3  Fresno, California 93720
   Telephone: (559) 708-4750
4  E-mail: kevinglittle@yahoo.com

5  Attorneys for Kasiner Farms, Inc. and West Hills Gypsum, LLC

6

7

8                    **IN THE UNITED STATES BANKRUPTCY COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11  In Re                              Case No.  14-10588-B-11

12  J&D WILSON AND SONS DAIRY, a       Chapter 11
    California partnership,            DC NO. KDG-3
13

14              Debtor-in-Possession   Hearing Date: March 13, 2014
                                       Time: 9:00 a.m.
15                                     Courtroom: 12, 5th Floor
                                       The Hon. W. Richard Lee
16

17  **OPPOSITION OF KASINER FARMS AND WEST HILLS GYPSUM TO MOTION FOR
    PRELIMINARY INJUNCTION UNDER 11 U.S.C. § 105 STAYING LITIGATION AGAINST
18                          DEBTOR'S GENERAL PARTNERS**

19  TO THE HONORABLE COURT:

20        Kasiner Farms, Inc. ("KFI") and West Hills Gypsum, LLC (WHG"), through their

21  undersigned counsel, hereby oppose the motion for a preliminary injunction filed by the

22  debtor-in-possession, J&D Wilson and Son Dairy (sometimes referred to herein as "the

23  Wilson Dairy"), seeking to extend the automatic stay to its general partners, pursuant to 11

24  U.S.C. § 105.   In support of their opposition, KFI and WHG provide the within points and

25  authorities, as well as the accompanying declaration of Kevin G. Little.  KFI and WHG also

26  will rely upon any additional legal argument or evidence presented prior to the submission of

27  this matter.

28  _____
    OPPOSITION TO MOTION UNDER 11 U.S.C. § 105

**Memorandum of Points and Authorities**

I.    Procedural and Factual Background

On March 16, 2012, KFI and WHG filed an action in the Fresno County Superior Court, entitled *Kasiner Farms, Inc. (formerly known as Kasiner Consulting and Farm Management and Four Corners Custom Farming); West Hills Gypsum, LLC v. J&D Wilson and Sons Dairy; Jim Wilson; Cornelius Vanderham,* Fresno Superior Court No. 12CECG00907.   Defendants Wilson and Vanderham are two of the partners of the Wilson Dairy, the debtor-in-possession in this Court.

After a partially successful demurrer, KFI and WHG filed a First Amended Complaint on July 16, 2012.  The causes of action in the First Amended Complaint are (1) breach of oral/implied-in-fact contract and (2) open book account. The First Amended Complaint sought damages in the amount of $89,725.85, exclusive of costs, contractual interest of 18 percent per annum, and attorney's fees/expenses.  As of October 1, 2012, the total amount due KFI and WHG, including interest and legal fees/expenses was $153,611.54.  Based on further interest and legal expenses, the amount owed KFI and WHG as of March 1, 2014 is 174,897.99.

The Wilson Dairy, Wilson and Vanderham answered the First Amended Complaint and filed a Cross-Complaint on August 15, 2012.  The Cross-Complaint names Joe Kasiner, the CEO of KFI and a member of WHG, and KFI as cross-defendants and includes claims for (1) breach of oral contract and (2) open book account.  The Cross-Complaint seeks damages in the amount of $156,674.00, unspecified accrued rent for a certain farm equipment, as well as costs, contractual interest of 18 percent per annum, and attorney's fees/expenses.

The state court action has proceeded through discovery and is trial ready.  Trial is currently scheduled to commence on April 1, 2014.  A notice of stay has been filed in the state court action, but only as to the Wilson Dairy, not the individual defendants, Wilson and Vanderham.  If permitted, KFI and WHG intend to proceed to trial against these individuals on the scheduled trial date.  Trial is estimated to last five days.

Essentially, the factual dispute in the state court action arises from monies due to KFI

1   for custom farming and farm management work for the Wilson Dairy between late 2007 and

2   2010, and gypsum product provided to the Wilson Dairy by WHG during that same

3   approximate time frame.  KFI and WHG have produced all of the records one would typically

4   associate with a the provision of these services and goods on an account stated basis,

5   including ledgers, statements, invoices, work records, employee time records, and other

6   paperwork.

7          With a few exceptions discussed below, the Wilson Dairy, Wilson and Vanderham do

8   not dispute that KFI provided custom farming services and charged reasonable rates for those

9   services, which were performed satisfactorily.  However, Wilson and Vanderham contend they

10  never agreed to pay KFI for farm management, despite the existence of numerous canceled

11  checks from the Wilson Dairy account to KFI specifically for farm management fees in late

12  2007, 2008 and early 2009.  The Wilson Dairy, Wilson and Vanderham also claim that KFI

13  owes them a greater amount for rental fees of  farming, irrigation and well equipment that was

14  utilized during their business arrangement.  The Wilson Dairy, Wilson, and Vanderham thus

15  apparently contend that KFI and WHG agreed to provide services and goods under terms that

16  resulted in their becoming indebted to their customers.   The Wilson Dairy, Wilson and

17  Vanderham have not provided any of supporting contemporaneously generated statements,

18  invoices or other documents reflecting the alleged amounts they now contend KFI and WHG

    owe them.

19  II.    Pertinent Legal Standards

20         The Wilson Dairy seeks relief to expand the bankruptcy stay to Wilson and Vanderham,

21  two of its general partners.  KFI and WHG recognize that this Court has subject matter

22  jurisdiction to consider this and any request which could potentially impact the bankruptcy

23  estate under 11 U.S.C. § 105; *see also Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re

24  Am. Hardwoods, Inc.)*, 885 F.2d 621, 623-24 (9th Cir. 1989).

25         Generally, the discharge of a chapter 11 debtor does not extinguish a debt that can be

26

27

28
_____

1    enforced against a jointly liable non-debtor.  *See* 11 U.S.C. § 524(e)-(f);[1] *see Resorts Int'l, Inc.*

2    *v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995) (chapter 11 plan

3    couldn't release non-debtors), *cert. denied*, 517 U.S. 1243 (1996); *Bruning v. United States*,

4    376 U.S. 358, 362 (1964) (non-debtor partners and guarantors liable for post-petition

5    contractual interest).  Unlike chapter 13, chapter 11 contains no provision extending the

6    automatic stay to non-debtors jointly liable with the debtor.  *See, e.g., United States v. Dos*

7    *Cabezas Corp.*, 995 F.2d 1486, 1491-1493 (9th Cir. 1993) (chapter 11 creditor may sue non-

8    debtor co-signers of promissory note).

9        However, a bankruptcy court may expand a chapter 11 stay pursuant to section 105(a),

10   if it determines that the debtor would otherwise suffer some cognizable prejudice due to

11   continuing litigation or collections efforts against related non-debtors.  *See, e.g. Circle K Corp.*

12   *v. Marks (In re Circle K Corp.),* 121 B.R. 257, 262 (Bankr.D.Ariz.1990).  Section 105(a) gives

13   the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a)

14   automatic stay but "threaten the integrity of a bankrupt's estate."  *Canter v. Canter (In re*

15   *Canter)*, 299 F.3d 1150, 1155 (9th Cir. 2002) (citation and quotation marks omitted);

16   *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987); *Solidus*

17   *Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093

18   (9th Cir. 2007).  An expanded stay under section 105 is not appropriate where the non-

19   debtor's liability is "independent" and primary, rather than derivative, of those of the debtor.

20   *O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1179 (9th Cir. 1989),

21   Moreover, unusual circumstances warranting an expanded stay under section 105 do not exist

22   where the non-debtor is independently liable, the right to indemnity is not absolute, and the

23   continuation of the suit will not interfere with the bankruptcy.  *Aetna Casualty & Sur. Co. v.*

24   *Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992).

25       The proper standard for reviewing a request for injunctive relief under § 105 against

26   a non-debtor co-defendant in pre-petition litigation is the preliminary injunction standard.  *See*

27       [1]Section 524(e) is a savings clause and provides the "discharge of a debt of the debtor does not affect
     the liability of another entity on, or the property of any other entity for, such debt."

28   _____

1  Fed.R.Civ.P. 65(a); *Excel Innovations, Inc. v. Solidus Networks, Inc. (In re Excel Innovations,*
2  *Inc.)*, 502 F.3d 1086, 1094 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2080 (2008). A moving
3  party debtor must show:  (1) a strong likelihood of success on the merits; (2) the possibility
4  of irreparable injury to plaintiff if preliminary relief is not granted; (3) a balance of hardships
5  favoring the debtor; and (4) advancement of the public interest.  Alternatively, a court may
6  grant the injunction if the moving party debtor demonstrates either a combination of probable
7  success on the merits and the possibility of irreparable injury or that serious questions are
8  raised and the balance of hardships tips sharply in his favor.  Id. at 1093-1095.  With respect
9  to the first element, "a debtor seeking to stay an action against a non-debtor must show a
10  reasonable likelihood of a successful reorganization." *Excel Innovations*, 502 F.3d at 1095.
11  Such a finding must be supported by evidence in the record. *Excel Innovations*, 502 F.3d at
    1097.
12      The maximum injunctive relief available under section 105 to non-debtors is stay until
13  confirmation of a reorganization plan.  *See Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In*
14  *re Am. Hardwoods, Inc.)*, 885 F.2d 621, 624-27 (9th Cir.1989) (bankruptcy courts lack the
15  power to issue injunctions that outlast plan confirmation).
16  III.    Argument
17      The requested injunction is not warranted, for the following reasons:
18      A.    Non-debtors Wilson and Vanderham are general partners of the Wilson Dairy
19  and, as such, they "are liable jointly and severally for all obligations of the partnership unless
20  otherwise agreed by the claimant or provided by law." Cal. Corp.Code § 16306(a). *See also*
21  *Young v. Riddell*, 283 F.2d 909, 910 (9th Cir.1960) (even secret or dormant partner was still
22  subject to joint and several liability, including for tax debts of bankrupt partnership).  The
23  liability of these non-debtor general partners is not derivative but joint and several with the
24  Wilson Dairy, a factor which weighs against injunctive relief under section 105.  *In re*
25  *Lockard)*, 884 F.2d at 1179.
26      B.    There is no evidence before the Court suggesting that a successful
27  reorganization is reasonably likely.  Indeed, the debtor's motion indicates that a liquidation
28

is equally likely.  The debtor merely indicates that its "goal" is to reorganize, but its disclosures indicate it has little financial cushion, far less than the customary 10 percent.  This Court expressed doubt at the prior hearing about the likelihood for this precise reason.  While proving a successful reorganization is probable may not be a "high burden," there has to be some reasonable evidence to satisfy the Court, and the debtor has not presented anything.  *Excel Innovations*, 502 F.3d at 1097.

C.    There also is no proof of irreparable harm from Wilson's and Vanderham's participating in the state court action.  While the debtor offers self-serving declarations as to the crucial management and reorganization roles of these two individuals to support its present motion, both Wilson and Vanderham were deposed in the state court action back in July 2012.  They had markedly different testimony at that time, to wit:

<u>Deposition of Jim Wilson, pp. 10-13.</u>[2]

Q.    Do you operate some aspect of your dairy business as an individual, as a sole proprietor?

A.    No.

Q.    What are the partnership shares between yourself,  your wife, your father-in-law and your mother-in-law?

A.    25 percent.

Q.    Is there anyone, other than the partners, who has some responsibility for the operation and management of the   dairy?

A.    My two sons.

Q.    What are their names?

A.    Jimmy and Dillon.

Q.    How old is Jimmy?

A.    25.

Q.    And how old is Dillon?

A.    20.

---

[2]The excerpts of Wilson's and Vanderham's depositions are attached as Exhibits A and B, respectively.

Q.   With respect to Jimmy, what are his responsibilities?

A.   Manager.

Q.   And how long has Jimmy been a manager?

A.   Three years.

Q.   What are Dillon's responsibilities?

A.   Just general labor.

Q.   Who was the manager before Jimmy became the manager three years ago?

A.   Myself.

Q.   How long had you been the manager?

A.   Since 2000.

Q.   So, essentially, since the inception of the operation?

A.   Yes.

Q.   Okay.  Your wife, does she have any active responsibilities?

A.   She pays bills.

Q.   Your father-in-law, does he have any active responsibilities?

A.   No.

Q.   Does he have any responsibilities at all --

A.   No.

Q.   -- with respect to the operation of the dairy?

A.   No.

Q.   He just simply has an ownership share?

A.   Yes.

Q.   Would you say he's what's called a silent partner?

A.   Yes.

Q.   And how about his wife, your mother-in-law, what are her responsibilities, if any?

A.   None.

Q.   She also would be characterized fairly as a silent partner?

A.  Yes.

Q.  Was there sometime in the past where your father-in-law and mother-in-law had a more active role in the  dairy?

A.  No.

Deposition of Cornelius Vanderham, pp. 8-9

Q.   All right.  Now, it's my understanding, sir, that  you're a partner in J&D Wilson And Sons Dairy.  Is that correct?

A.  Yes.

Q.  And have you been a partner in that dairy since its inception 12 years ago?

A.  Yes.

Q.  Okay.  You were characterized yesterday by Mr. Wilson as, more or less, a silent partner in this dairy operation.  Would you agree with that assessment?

A.  Yes.

Q.  Do you have any day-to-day responsibilities as pertains to this dairy?

A.  No.

Therefore, despite the present self-serving characterizations, the non-debtors' deposition testimonies in the state court action make it clear that (a) Wilson has not managed the Wilson Dairy since 2009, and his wife, who also is a partner, handles most of the finances; and (b) Vanderham has never had any day-to-day responsibilities with the Wilson Dairy.  It strains credulity for the debtor to contend that these two individuals need to focus on the bankruptcy issues and cannot afford to participate in a one week trial without endangering the reorganization effort.  There simply is no credible evidence to support the contention in ¶ 16 of the debtor's moving papers, i.e., that Wilson is the manager and Vanderham is the strategic consultant.  This also weighs against the issuance of an injunction, showing that the balance of hardships does not warrant a stay.  *See Aetna Casualty*, 140 B.R. at 60.  The required showing of a substantial and adverse impact on the debtor's ability to reorganize has not been shown. *In re Gathering Restaurant, Inc.*, 79 B.R. 992, 1000 (Bankr. N.D. Ind. 1986); *In re Codfish Corn.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988).

D.      Finally, imposing a stay for the year or more that this proceeding could remain pending would only prolong the inevitable.  Absent some voluntary contribution to the bankruptcy estate by the individual partners (which would be a highly exceptional circumstance, and section 723 is inapplicable in a chapter 11 case), KFI's and WHG's claims against them will pass through the bankruptcy unaffected.  *See In re Lowenschuss)*, 67 F.3d at 1401-02.  While the debtor claims that could result in potentially inconsistent judgments, the issues determined in the state court litigation against the non-debtors would have collateral estoppel effect in any later action against the debtor.   *See* Rest.2d Judgments, § 49, comment b, p. 36 (plaintiff may bring separate actions against co-obligors on contract but plaintiff is bound by issues determined in first action); *see also* 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 66, p. 137; *Knowles v. Tehachapi Valley Hospital Dist.*, 49 Cal.App.4th 1083, 1090  (1996) (same).  Moreover, offset principles and prohibitions against double recovery would make a second action highly unlikely.  *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1174 (E.D.Cal. 2008) (recognizing in a case asserting, inter alia, 17200 claims that "[w]here state law provides for statutory damages, the trial court's discretion may be called upon to prevent double recovery"). Finally, in the unlikely event that some aspect of KFI's and WHG's claims survived the state court litigation, their claims against the debtor partnership would be resolved in this Court, either as part of the reorganization plan or as a result of its dissolution if it is unable to reorganize and instead liquidates.  The public interest considerations also do not weigh in favor of the requested injunction.

WHEREFORE the motion for preliminary injunction under 11 U.S.C. § 105 should be denied..

Dated: March 6, 2014              /s/ Kevin G. Little
                                  Kevin G. Little
                                  Attorney for Plaintiff Isaac Miller

1

SUPPORTING DECLARATION OF KEVIN G. LITTLE

2          The undersigned, Kevin G. Little, hereby declares under penalty of perjury as follows:

3          1.        I am the attorney for Kasiner Farms, Inc. and West Hills Gypsum in the above-

4    captioned proceeding.  I am also the attorney for these entities in the pre-petition litigation

5    pending in the Fresno Superior Court, No. 12CECG00907.   That litigation has been stayed

6    as to the debtor but is continuing as to Messrs. Wilson and Vanderham.  An estimated five

7    day trial is scheduled to commence on April 1, 2014.  My clients intend on proceeding to trial

8    as scheduled if at all possible.

9          2.        The procedural and factual representations in the accompanying pleading

10   regarding the state court litigation, from page 2, line 9 to page 3, line 18, are true and correct

11   to the best of my knowledge.

12          3.        Attached hereto as Exhibits A and B and true and correct copies of the pertinent

13   excerpts of the depositions of Jim Wilson and Cornelius Vanderham, taken on July 3 and 5,

14   2012.

15          4        If called as a witness, I could competently testify as to the foregoing.

16   In Fresno, California, this 6th day of March 2014.

17                                                  /s/ Kevin G. Little
                                                    Kevin G. Little

18

19

20

21

22

23

24

25

26

27

28
_____
OPPOSITION TO MOTION UNDER 11 U.S.C. § 105                         -10-