```
 1            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                         FOR THE COUNTY OF FRESNO

 3                                 ---oOo---

 4   KASINER FARMS, f/k/a KASINER              )
     CONSULTING AND FARM MANAGEMENT; FOUR      )  NO.  12CECG00907
 5   CORNERS CUSTOM FARMING; WEST HILLS        )
     GYPSUM,                                   )
 6                                             )
                Plaintiffs,                    )
 7                                             )
                  -vs-                         )
 8                                             )
     J&D WILSON AND SONS DAIRY; JIM            )
 9   WILSON; CORNELIUS VANDERHAM; DOES         )
     1-10,                                     )
10                                             )
                Defendants.                    )
11   _____)

12

13

14                                 ---oOo---

15

16    Fresno, California                                    July 2, 2012

17

18         The deposition of JAMES WILSON was taken in the

19   above-entitled matter pursuant to all of the provisions of

20   law pertaining to the taking and use of depositions before

21   Theresa K. Hansen, CSR, with offices at Fresno, California,

22   commencing at the hour of 9:06 a.m. at the law office of

23   Kevin G. Little, 470 East Herndon Avenue, Suite 102, Fresno,

24   California.

25
```

Page 8

         MR. IDE: I'm only going to object to the extent that any legal conclusions are called for. Because we have not filed an answer yet, and you're asking us to produce all documents that support any affirmative defenses. I haven't, frankly, decided which affirmative defenses I'm going to assert.
         MR. LITTLE: Very well.
         MR. IDE: I haven't decided which documents I'm going to be producing at trial in this matter, but it will depend on your client's response to our cross-complaint.
         MR. LITTLE: Very well.
BY MR. LITTLE:
    Q. Well, that being stated, otherwise, have you produced all of the documents that are presently available to you?
    A. Yes.
       That question was for me?
    Q. Right. All right. In response to certain discovery requests that my office propounded in this matter, specifically some form interrogatories, some requests for admission, and also some requests for production of documents, did you review those?
    A. Yes.
    Q. And did you answer those as capably as you could?
    A. Yes.

Page 9

    Q. Okay. Have you reviewed those in preparation for this deposition?
    A. Yes.
    Q. Are there any corrections to those documents that you'd like to make at this point in time?
    A. No.
    Q. It's my understanding, sir, that you are a partner in J&D Wilson And Sons Dairy --
    A. Yes.
    Q. -- is that correct?
       How long has that dairy been in business?
    A. 12 years.
    Q. The name implies that it's a dairy.
       Does it do any other business?
    A. No.
    Q. How many head of cattle do you have?
    A. 8,000.
    Q. And do you operate your dairy from a single location or from multiple locations?
    A. Single.
    Q. And that location is where?
    A. 11720 West Mount Whitney, Riverdale.
    Q. In your interrogatory responses, you identify various persons who have involvement in that business.
       Let me just ask you, who are all of the partners?

Page 10

    A. My -- myself, my wife, father-in-law and mother-in-law.
    Q. Okay. And J&D Wilson And Sons Dairy is a partnership, correct?
    A. Yes.
    Q. And how long has that partnership been in existence?
    A. 12 years.
    Q. Was there some predecessor entity that operated the dairy that presently is owned and operated by J&D Wilson And Sons Dairy?
    A. No.
    Q. I noticed in some of the paperwork there's a reference to an entity called Wilson & Vanderham Alladin 300.
       What is that entity?
    A. That's not an entity.
    Q. Is it a dba?
    A. No.
    Q. What is it? Are you familiar with it at all?
    A. Wilson & Alladin?
    Q. Wilson & Vanderham Alladin 300.
       MR. IDE: What document does it say that on? It may help him.
       MR. LITTLE: Sure. Well, I don't believe it's on any of the documents you produced.

Page 11

BY MR. LITTLE:
    Q. But in any event, you're not familiar with that entity?
    A. No.
    Q. And to your understanding, you don't do any business under that name?
    A. No.
    Q. Do you do business under any other entities or corporations?
    A. No.
    Q. Do you operate some aspect of your dairy business as an individual, as a sole proprietor?
    A. No.
    Q. What are the partnership shares between yourself, your wife, your father-in-law and your mother-in-law?
    A. 25 percent.
    Q. Is there anyone, other than the partners, who has some responsibility for the operation and management of the dairy?
    A. My two sons.
    Q. What are their names?
    A. Jimmy and Dillon.
    Q. How old is Jimmy?
    A. 25.
    Q. And how old is Dillon?

Page 12

1  A.  20.
2  Q.  With respect to Jimmy, what are his
3  responsibilities?
4  A.  Manager.
5  Q.  And how long has Jimmy been a manager?
6  A.  Three years.
7  Q.  What are Dillon's responsibilities?
8  A.  Just general labor.
9  Q.  Who was the manager before Jimmy became the manager
10 three years ago?
11 A.  Myself.
12 Q.  How long had you been the manager?
13 A.  Since 2000.
14 Q.  So, essentially, since the inception of the
15 operation?
16 A.  Yes.
17 Q.  Okay.  Your wife, does she have any active
18 responsibilities?
19 A.  She pays bills.
20 Q.  Your father-in-law, does he have any active
21 responsibilities?
22 A.  No.
23 Q.  Does he have any responsibilities at all --
24 A.  No.
25 Q.  -- with respect to the operation of the dairy?

Page 13

1  A.  No.
2  Q.  He just simply has an ownership share?
3  A.  Yes.
4  Q.  Would you say he's what's called a silent partner?
5  A.  Yes.
6  Q.  And how about his wife, your mother-in-law, what
7  are her responsibilities, if any?
8  A.  None.
9  Q.  She also would be characterized fairly as a silent
10 partner?
11 A.  Yes.
12 Q.  Was there sometime in the past where your
13 father-in-law and mother-in-law had a more active role in the
14 dairy?
15 A.  No.
16 Q.  Do they have some other dairy operation that they
17 operate?
18 A.  Yes.
19 Q.  What's that?
20 A.  He's in partnership with his two sons' own dairies.
21 Q.  What's the name of their dairy?
22 A.  D&V Vanderham and Dick Vanderham & Sons.
23 Q.  Does J&D Wilson And Sons Dairy do any business in
24 partnership with either one of those dairies?
25 A.  No.

Page 14

1  Q.  So it's a completely separate, standalone
2  operation?
3  A.  Yes.
4  Q.  Has J&D Wilson And Sons Dairy had any, in the last
5  five years, any lawsuits filed against it?
6  A.  Yes.
7  Q.  How many?
8  A.  One -- or two, actually.
9      You're counting like workman's comp stuff, I would
10 take it?
11 Q.  That would count, yes.
12 A.  Two.
13 Q.  So one of those, I would take from your answer, is
14 a workers' comp case?
15 A.  Yes.
16 Q.  And what's the other one?
17 A.  Was a grain contract dispute.
18 Q.  Was the dairy a plaintiff or a defendant in that
19 action?
20 A.  Defendant.
21 Q.  What was the name of the grain contractor?  Or what
22 is the name?
23 A.  Of the contract?
24 Q.  Of the grain provider.
25 A.  Penny Newman.

Page 15

1  Q.  Say that again.
2  A.  Penny Newman.
3  Q.  How do you spell that?
4  A.  P-E-N-N-Y, N-E-W-M-A-N.
5  Q.  Okay.  Is that ongoing?
6  A.  No.
7  Q.  Did that go to trial?
8  A.  No.
9  Q.  Were the terms of the resolution confidential?
10 A.  Yes.
11 Q.  Does J&D Wilson And Sons Dairy employ any people
12 other than those people you've already mentioned, Jimmy and
13 Dillon?
14 A.  Yes.
15 Q.  How many employees does it have?
16 A.  60.
17 Q.  Back in 2008, how many employees did the dairy
18 have, approximately?
19 A.  30.
20 Q.  Are any of those 60 employees vested with any sort
21 of management responsibilities?
22 A.  No.
23 Q.  They're all just laborers?
24 A.  Yes.
25 Q.  Does J&D Wilson And Sons Dairy rent any land in