**28**

1  Jacob L. Eaton, CSB No. 244834
   KLEIN, DeNATALE, GOLDNER,
2    COOPER, ROSENLIEB & KIMBALL, LLP
   4550 California Ave., Second Floor
3  Bakersfield, CA 93309
   Telephone:   661-395-1000
4  Facsimile:    661-326-0418
   Email:        jeaton@kleinlaw.com
5
   Attorneys for Debtor in Possession,
6  J&D WILSON AND SONS DAIRY

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11  In re:                              Case No. 14-10588-B-11

12  J & D WILSON AND SONS
    DAIRY,                              Chapter 11
13
             Debtor-in-Possession,      DC No. KDG-20
14
                                        Date:    October 29, 2014
15                                      Time     3:00 p.m.
                                        Place:   United States Bankruptcy Court
16                                               510 19th Street
                                                 Bakersfield, California
17                                      Judge:   Honorable W. Richard Lee

18

19       **PLAN OF REORGANIZATION DATED SEPTEMBER 3, 2014**

20                            **Introduction**

21       Pursuant to section 1121(a) of the Code,[1] J & D WILSON AND SONS DAIRY, a

22  California partnership, the Debtor in the above-captioned Chapter 11 case, respectfully proposes

23  the following Plan. Debtor is the proponent of this Plan under Section 1129.[2]

24       The Plan contemplates the reorganization of Debtor and the resolution of all outstanding

25  Claims against and interests in Debtor.  If any Impaired Class of Claims against Debtor entitled to

26  vote on this Plan does not accept the Plan by the requisite statutory majority required by section

27  _____

28  [1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in Section 18.01 of this Plan

    [2] All Section numbers refer to sections of the Code unless otherwise specified.

1126(c) of the Code, then Debtor will proceed to confirm the Plan under section 1129(b) of the Code.

Under section 1125(b) of the Code, votes to accept or reject a plan of reorganization cannot be solicited from holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by the Bankruptcy Court and distributed to such holders. The *Disclosure Statement Dated September 3, 2014* that accompanies the Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, and operations, projections for those operations, risk factors associated with the business and the Plan, and a summary and analysis of the Plan and certain related matters.

## Article I.    Designation and Treatment of Administrative Claims and Priority Claims

Administrative Claims and priority claims are defined and treated in the Plan as follows:

### Section 1.01    Class One Claims:  Administrative Expense Claims.

Class One Claims are the Administrative Claims referred to in Section 507(a)(2) and include only administrative expenses of the Chapter 11 estate allowed under Section 503 of the Code.  These claims will include, among other administrative claims allowed under Section 503, (a) any sums owed to the United States Trustee under Section 1930(a)(6) of the Code, (b) any Administrative Claims arising out of the rejection of real or personal property leases that were previously assumed, (c) 503(b)(9) Claims, and (d) allowed professional fees owed to attorneys, accountants, or other professionals retained by Debtor during the pendency of the case.

***Treatment of Class One Claims***.  Class One Claims are unimpaired.  Class One Claims incurred through the Effective Date will be paid in cash on or before the Effective Date, or after Court order if necessary, unless such claimants agree to a different treatment.  Those Claims payable after allowance by the Court will be paid within 20 days after such allowance is granted.  Except as provided below, any application for approval of a Class One Claim arising prior to Confirmation of the Plan will be filed and served no later than thirty days after Debtor gives notice of said requirement to the affected creditors, ***except*** that application for allowance and payment of any Professional Fee Claims may be made at any time during the Term of the Plan.  Professionals employed by Debtor will not be required to file applications for approval of

fees incurred after confirmation of the Plan.  This paragraph will not apply to US Trustee Fees, post-petition taxes, utility bills, post-petition debts incurred in the ordinary course of the Debtor's business.  All such post-petition obligations will be paid when they come due under applicable law without Court order.  Class One Claims will be paid from available cash.

### Section 1.02    Class Two Claims: Other Priority Claims.

Priority claims as defined by Section 507(a)(3)-(9) of the Code are Class Two Claims. Class Two Claims will be paid in accordance with the Code.  On the Petition Date, Debtor owed $20,035.59 to its employees for the one week period in February 2014  Debtor paid the employee's wages in full on February 16, 2014, pursuant to order of the Court.  Debtor also owed employment taxes to the Internal Revenue Service ("IRS") and the State of California - Employment Development Department ("EDD") at the commencement of its case.  Debtor has paid the IRS and the EDD in full during its case with the authority of the Court.  Debtor does not believe that there are any unpaid Class Two Claims.  However, the Internal Revenue Service filed a Proof of Claim for 2014 year-end taxes.  Debtor will pay these taxes as they come due in the ordinary course of business.  There will be no other distribution made to Class Two Claims.

## Article II.    Classification and Treatment of Secured Claims:  Unimpaired Claims

### Section 2.01    Class Three Claim: Claim of Bank of the West

The Class Three Claim will consist of the Allowed Secured Claim of Bank of the West secured by a 2013 Ford F-350 Truck.  The total amount of the claim held by Bank of the West was $24,681.00 on the Petition Date.

*Treatment of the Class Three Claim*: The Class Three Claim is unimpaired.  The Class Three Claim will be paid according to the terms of the Vehicle Purchase Agreement and will not be modified by the Plan.

### Section 2.02    Class Four Claim: Claim of the Fresno County Tax Collector

The Class Four Claim will consist of the Allowed Secured Claim of the Fresno County Tax Collector ("FCTC") secured by personal property.  The total amount of the claim held by FCTC was $31,544.94 on the Petition Date.

///

***Treatment of the Class Four Claim***: The Class Four Claim is unimpaired.  The Class Four Claim will be paid in full on the Effective Date.

**Article III.    Classification and Treatment of Secured Claims:  Impaired Claims**

**Section 3.01    Class Five Claim: Secured Claim of Farm Credit West, FLCA**

The Class Five Claim will consist of the Allowed Secured Claims of Farm Credit West, FLCA ("FLCA") secured by a first deed of trust recorded against the Real Property owned by Debtor.  The Class Four Claim was about $7,575,188.24 on the Petition Date.

***Treatment of the Class Five Claim***: The Class Five Claim is impaired.  The Class Five Claimant will retain its deed of trust against the Real Property and will be paid as follows:

a.    Except as modified herein and by the FLCA New Loan Documents, FLCA and Debtor will retain all rights and responsibilities set forth in the FLCA Pre-Petition Loan Documents.

b.    The amount of the Allowed Class Five Claim will be $7,575,188.24, interest accrued but not paid on the Effective Date and reasonable costs including attorneys' fees and consultant expenses, as provided by the FLCA Pre-Petition Loan Documents.

c.    Debtor will pay all amounts necessary to bring the Class Five Claim current based on the FLCA Pre-Petition Loan Documents through 24 equal monthly payments, without interest. As of September 3, 2014, the amount necessary to bring the Class Five Claim current is about $290,000.00 which includes interest accrued, but not paid, between the Petition Date and the Effective Date, plus reasonable costs including attorneys' fees and consultant expenses, as provided by the FLCA Pre-Petition Loan Documents.  This payment will be due on the 5th of each month until paid in full.

d.    Debtor and FLCA will enter into the FLCA New Loan Documents which will document the treatment of the Class Five Claim.  The FLCA New Loan Documents will be consistent with the terms of the Plan. Upon the Effective Date and the execution of the FLCA New Loan Documents, the FLCA New Loan Documents will be controlling.  The FLCA New Loan Documents will be executed by FLCA and Debtor before the Effective Date.

///

### Section 3.02    Class Six Claim:  Secured Claim of Farm Credit West, PCA

The Class Six Claim will consist of the Allowed Secured Claim of Farm Credit West, PCA ("PCA") arising from a Letter of Credit made to the Vanderham Family Trust and secured by the Real Property owned by the Debtor and real property owned by the Vanderham Family Trust. The Class Six Claim secures repayment of an industrial revenue bond that was issued by the California Pollution Control Authority ("the Authority").  The bond held by the Authority was about $2,589,589.00 on the Petition Date ("the Bond").

***Treatment of the Class Six Claim***:  The Class Six Claim is impaired.  The Class Six Claimant will retain its lien against property of the estate and the Class Six Claim will be paid as follows:

a.    PCA will retain all rights and responsibilities set forth in the pre-petition loan documents between Vanderham Family Trust and PCA ("the PCA Pre-Petition Loan Documents"), except as modified by the Plan.

b.    Debtor and PCA will enter into the PCA New Loan Documents which will document the treatment of the Class Six Claim.  The PCA New Loan Documents will be consistent with the terms of the Plan. Upon the Effective Date and the execution of the PCA New Loan Documents, the PCA New Loan Documents will be controlling.  The PCA New Loan Documents will be executed by PCA and Debtor before the Effective Date.

c.    The PCA New Loan Documents will include additional provisions including the reaffirmation of guarantees by guarantors, reaffirmation of security interests, and other financial covenants and provisions.

d.    Debtor will execute security agreements to grant a lien against its fixtures and Bond proceeds.

e.    Debtor will pay all payments required by the Bond to PCA.

f.    PCA's lien will remain against the collateral in the same order of priority that existed on the Petition Date, except that the PCA will release its deed of trust against the real property owned by the Vanderham Family Trust that secured repayment of the PCA Pre-Petition Loan in exchange, FLCA will release the Real Property owned by Debtor as discussed below.

**Section 3.03   Class Seven Claim: Secured Claim of Farm Credit West, FLCA**

The Class Seven Claim will consist of the Allowed Secured Claim of FLCA arising from a Letter of Credit made to the Vanderham Family Trust and secured by the Real Property owned by the Debtor and real property owned by the Vanderham Family Trust. The Class Seven Claim secures repayment of an industrial revenue bond that was issued by the Authority.  The bond held by the Authority was about $2,500,000.00 on the Petition Date ("the FLCA Bond").

*Treatment of the Class Seven Claim*:  The Class Seven Claim is impaired.  The Class Seven Claimant will be treated as follows:

a.       FLCA will retain all rights and responsibilities set forth in the pre-petition loan documents between Vanderham Family Trust and FLCA ("the FLCA Pre-Petition Loan Documents"), except as modified by the Plan.

b.       FLCA's lien will remain against the collateral in the same order of priority that existed on the Petition Date, except that the FLCA will release its deed of trust against the Real Property owned by Debtor.

c.       Debtor will not be responsible for payment of the Class Seven Claim.

**Section 3.04   Class Eight Claim:   Secured Claims of Wells Fargo Bank, N.A.**

The Class Eight Claim will consist all of the Allowed Secured Claims of Wells Fargo Bank, N.A. ("Wells Fargo") under the  Wells Fargo Pre-Petition Loan Documents.  The Class Eight Claim is secured by, among other things, a security interest in livestock, inventory, equipment, and other personal property of Debtor, and a deed of trust against real property owned by Debtor pursuant the Wells Fargo Pre-Petition Loan Documents.

The Class Eight Claim was $6,375,392.16 on the Petition Date.

*Treatment of the Class Eight Claims*:  The Class Eight Claim is impaired.  The Class Eight Claimant will retain its liens, including any pre-petition liens and any liens granted pursuant to the Cash Collateral Order and the Class Eight Claim will be paid as follows:

a.       The amount of the Allowed Class Eight Claim will be $6,375,392.16, plus non-default interest accrued through but not paid on the Effective Date and reasonable costs including attorneys' fees and consultant expenses, as provided by the Wells Fargo Pre-Petition Loan

Documents, less any principal payments made toward the Class Eight Claims, if any, since the Petition Date.[3]

      b.      Interest on the amount of the Allowed Class Eight Claim will accrue at the rate of prime rate, plus 2% per annum, from and after the Effective Date through the 24th month after the Effective Date.  Interest will accrue at the rate of prime rate, plus 3.5% in the months from and after the 25th month after the Effective date.  In the event of future default during the first 24 months after the Effective Date, the interest will accrue at the rate of prime rate, plus 6%.  In the event of default during the months beginning in the 25th month after the Effective date, interest will accrue at the rate of prime rate, plus 7.5%.

      c.      Debtor will make payments to Wells Fargo on its Class Eight Claim of principal and interest totaling about $97,000.00 per month beginning on the first day of the month following the Effective Date and continuing each month until the Maturity Date when the Class Eight Claim will be paid in full.  The actual monthly payment amount will be calculated based on the balance of the loan, the applicable interest rate, the amortization period (7 years), and a principal and interest amortization (as opposed to principal plus interest amortization).

      d.      Debtor and Wells Fargo will enter into the Wells Fargo New Loan Documents which will incorporate and modify the terms and conditions of the Wells Fargo Pre-Petition Loan Documents, as modified and agreed to between Wells Fargo and Debtor, and will document the treatment of the Class Eight Claim.  The Wells Fargo New Loan Documents will be consistent with the terms of the Plan and in form and substance satisfactory to Wells Fargo and Debtor. Upon the Effective Date and the execution of the Wells Fargo New Loan Documents, the Wells Fargo New Loan Documents will be controlling.  The Wells Fargo New Loan Documents will be executed by Wells Fargo and Debtor before the Effective Date.

      e.      The Wells Fargo New Loan Documents will include additional provisions and covenants including loan-to-value requirements, income requirements, reporting requirements, a cash sweep of an amount greater than $750,000.00 on May 31 and November 30 of each year

---

[3] Adequate protection payments paid to Wells Fargo were applied to accruing interest, and not principal.

after the Effective Date, release of any claims against Wells Fargo, reaffirmation of guarantees, and other financial covenants and provisions.

     f.     The Class Eight Claim will be all due and payable on the date that is the thirty months after the Effective Date ("the Maturity Date")(i.e., a January 1, 2015 Effective Date result in the Class Eight Claim being all due and payable on July 1, 2017).

**Section 3.05   Class Nine Claim: Claim of Deere Credit, Inc. and/or Deere & Company**

The Class Nine Claim will consist of the Allowed Secured Claim of Deere Credit, Inc. and/or Deere & Company ("Deere Credit") secured by a purchase money security interest in two row crop tractors, implements, and a GPS system.  The total amount of the claim held by Deere Credit was $244,775.19 on the Petition Date.

*Treatment of the Class Nine Claim*: The Class Nine Claim is impaired.  The Class Nine Claimant will retain its lien and will be amortized and paid over a period of five years.  The Class nine Claim will accrue interest at the rate of five percent per annum, and will be paid through monthly payments of $4,529.10 beginning on the twentieth day of the first month following the Effective Date.

**Article IV.     Provisions for Executory Contracts and Unexpired Leases**

**Section 4.01   Class Ten Claim: Unexpired Leases with C.A. Vanderham & Sons Dairy**

The Class Ten Claim will consist of the Farm Lease dated January 5, 2007, between Debtor and C.A. Vanderham & Sons Dairy ("Landlord") whereby Debtor leases about 94.54 acres of farmland ("the 94 Acre Lease") and the Farm Lease dated January 1, 2011, between Debtor and Landlord, whereby Debtor lease about 825 acres of farmland ("the 825 Acre Lease") hereafter together referred to as the Leases.

*Treatment of the Class Ten Claim*:   The Class Ten Claim is unimpaired under the Plan. Debtor will assume the Leases.

///

///

**Section 4.02    Class Eleven Claims:  Unexpired Leases with John Deere Financial**

The Class Eleven Claim will consist of the leases between Debtor and John Deere Financial and/or Deere Credit, Inc. ("John Deere") whereby Debtor leases two tractors from John Deere ("the Tractor Lease") and a GPS System from John Deere ("GPS Lease").

*Treatment of the Class Eleven Claims*:  The Class Eleven Claims are unimpaired.  Debtor will assume the Tractor Lease and the GPS Lease with John Deere.

**Section 4.03    Class Twelve Claim:  Executory Contract with California Dairies, Inc.**

The Class Twelve Claim will consist of the executory contract between Debtor and California Dairies, Inc. regarding the Milk Marketing and Membership.

*Treatment of the Class Twelve Claim*:  The Class Twelve Claim is unimpaired.  Debtor will assume the Milk Marketing and Membership Agreement with California Dairies, Inc.

**Section 4.04    Class Thirteen Claim:  Unexpired Leases with Onshore Exploration Corporation**

The Class Thirteen Claims will consist of the two unexpired leases between Debtor and Onshore Exploration Corporation ("Onshore") dated August 1, 2012, and August 14, 2012, concerning Onshore's right to prospect for oil, gas and minerals on the Real Property owned by Debtor.

*Treatment of the Class Thirteen Claim*:  The Class Thirteen Claim is unimpaired.  Debtor will assume the two executory contracts between Debtor and Onshore.

**Section 4.05    Class Fourteen Claim:  Executory Contract with Standard Cattle**

The Class Fourteen Claim will consist of the Executory Contract between Debtor and Standard Cattle dated March 20, 2013 ("Heifer Purchase and Raising Contract").

*Treatment of Class Fourteen Claim:*  The Class Fourteen Claim is unimpaired.  Debtor will assume the Heifer Purchase and Raising Contract with Standard Cattle.

**Section 4.06    Class Fifteen Claim: Unexpired Lease with L&J Vanderham Dairy**

The Class Fifteen Claim will consist of the Unexpired Lease between Debtor and L&J Vanderham Dairy ("Milk Production Base Lease") whereby L&J Vanderham Dairy leases 10,000 pounds of Debtor's production base.

***Treatment of the Class Fifteen Claim:*** The Class Fifteen Claim is impaired. Debtor intends to reject the Milk Production Base Lease. Any general unsecured claims arising out of the rejection of the Milk Production Base Lease will be treated as a Class Nineteen Claim.

### Section 4.07    Class Sixteen Claims:  Other Executory Contracts and Unexpired Leases

Debtor does not believe that it was a party to any other Executory Contracts or Unexpired Leases on the Petition Date other than the leases and contracts described in Classes Ten through Fifteen described above other than a feed contract that will be complete before the hearing on the Disclosure Statement. Any Unexpired Lease or Executory Contract that is not specifically treated herein is rejected. Any general unsecured claims arising out of the rejection of executory contracts and unexpired leases by Debtor will be treated as a Class Twenty Claim.

### Article V.    Provisions for Allowed Administrative Convenience Claims Consisting of General Unsecured Claims of $5,000.00 or Less.

### Section 5.01    Class Seventeen Claims

The Class Seventeen Claims will consist of all of the Allowed Claims of general unsecured creditors of Debtor owed $5,000.00. Debtor estimates that the amount of the Class Seventeen Claims will be about $22,653.16 on the Effective Date.

***Treatment of the Class Seventeen Claims***: The Class Seventeen Claims are impaired. The Class Seventeen Claims will not accrue interest. The Class Seventeen Claimants will receive payment in full of their Allowed Claims through a one-time payment of $22,653.16 within 30 days of the Effective Date of the Plan in satisfaction of their claims.

The pro-rata share of any Class Seventeen Claim to which an objection has been filed before the Effective Date will be segregated by Debtor until such time as the objection is resolved and final by order of the Court. If no such objection to a Class Seventeen Claim has been filed prior to the Effective Date, the Claim will be allowed.

///

///

///

**Article VI.    Provisions for Allowed Claims of Western Milling, LLC.**

   **Section 6.01   Class Eighteen Claim**

   The Class Eighteen Claim will consist of the Allowed Claim held by Western Milling, LLC ("Western Milling").  Western Milling holds a general unsecured claim against Debtor in the amount of $7,397,622.51 as of the Petition Date.  The Class Eighteen Claimant holds a deed of trust against real property located in Ontario California, owned by C.A. Vanderham and Sons Dairy which secures repayment of the Class Eighteen Claim ("Ontario Real Property").

   ***Treatment of the Class Eighteen Claim.***  The Class Eighteen Claim is impaired. The Class Eighteen Claim will receive monthly payments of $10,000.00 beginning on the twentieth day of the first month following the Effective Date and continuing until the earlier of (a) the sale of the Ontario Real Property or (b) The completion to payments to the Class Twenty Claimants, at which time it will share in $39,000.00 per month pro-rata with the Class Nineteen Claims until paid in full.

**Article VII.    Provisions for Allowed General Unsecured Claims of Parties Related to Debtor**

   **Section 7.01   Class Nineteen Claim.**

   The Class Nineteen Claim will consist of the Allowed Claims of C.A. Vanderham & Sons Dairy, the Allowed Claim of Hidden Valley Cattle, the Allowed Claim of Resource Buyers, the Allowed Claim of Lazy V Farms, the Allowed Claim of D&V Dairy, and the Allowed Claim of L&J Vanderham Dairy to the extent of rejection damages.  C.A. Vanderham & Sons Dairy held a general unsecured claim in the amount of $3,372,520.72 on the Petition Date.   Any claims held by C.A. Vanderham & Sons Dairy relating to the Class Ten Claims are not included in the Class Nineteen Claim except if there are rejection damages.  The Class Nineteen Claim held by C.A. Vanderham & Sons Dairy will increase after the sale of the Ontario Real Property by the amount of proceeds from the Ontario Real Property used to pay the Class Eighteen Claim.

   ***Treatment of the Class Nineteen Claim.***  The Class Nineteen Claims are impaired.  The Class Nineteen Claims are held by entities owned and controlled by relatives of the partners in Debtor.  The relationships are more fully described in the Disclosure Statement at pages 5, 6, 11,

and 12.  The Class Nineteen Claims will accrue interest at the federal judgment rate.  The Class Nineteen Claims will be paid a pro-rata share of $29,000.00 per month beginning on the twentieth day of the earlier of (a) the 61st month after the Effective Date, or (b) after payment in full of the Class Twenty Claims.  However, Class Nineteen will share $39,000.00 per month pro rata with the Class Eighteen Claimant in the event the Class Eighteen Claim has not been fully satisfied from the sale of the Ontario Real Property at the time the Class Twenty Claims are paid in full.

**Article VIII.  Provisions for Allowed Claims of General Unsecured Creditors in Excess of $5,000.00, except for Claims held by Western Milling, LLC (Class Eighteen) and of Parties Related to Debtor (Class Nineteen)**

**Section 8.01    Class Twenty Claims**

The Class Twenty Claims will consist of the Allowed Claims of general unsecured creditors of Debtor not included in the Class Seventeen, Eighteen, or Nineteen Claims.  The Class Twenty Claims include, but are not limited to, the deficiency claims of secured creditors who have repossessed and liquidated their collateral, the unsecured portion of secured claims, and general unsecured claims arising out of the rejection of executory contracts and unexpired leases.  Debtor estimates that the amount of the General Unsecured Claims to be $1,644,350.36.  The Class Twenty Claims do not include claims held by the creditors that are controlled by the relatives of the principals of Debtor identified and treated in Class Nineteen, claims arising from the Leases included in Class Ten, claims held by Western Milling included in Class Eighteen, and claims less than $5,000.00 that are separately treated in Class Seventeen.  Therefore, Debtor estimates that the amount of the allowed Class Twenty Claims will be $1,644,350.36.

***Treatment of the Class Twenty Claims***:  The Class Twenty Claims are impaired.  The Class Twenty Claims will accrue interest at the federal judgment rate.  Debtor will pay one hundred percent of the Allowed Claims to unsecured creditors over a period of no more than five years as follows:

a.    Debtor will make payments totaling $25,000.00 per month to the Class Twenty Claimants commencing on the twentieth day of the month following the Effective Date, and continuing each month through the thirtieth month following the Effective Date.

b.      Debtor will make payments totaling $33,000.00 per month per month to the Class Twenty Claimants commencing on the twentieth day of the Thirty-First month following the Effective Date, and continuing each month the Class Twenty Claims are paid in full.

b.      All Class Twenty Claimants will receive a pro rata share of each distribution made by Debtor under this Plan based upon the amount of their Allowed Claims.

c.      The payment to the Class Twenty Claimants will increase by $10,000.00 per month at the time that the Class Eighteen Claim is paid in full.

d.      Debtor will not pursue preferential transfers because the Plan provides for 100% payment to all creditors with interest.  Recovery of preferences would not increase the net dividend under the Plan because any recoveries would result in the increase of claims against the estate under 11 U.S.C. § 502(h).

**Article XI.      Provision for Interests of Principals of Debtor**

**Section 9.01      Class Twenty-One Claims:  Interests of the Partners of Debtor**

Class Twenty-one Claims are the interests of James and Darla Wilson and Cornelius Vanderham and Eleanor Vanderham as trustees of the Vanderham Family Trust, dated March 17, 1994, the partners of Debtor.

***Treatment of the Class Twenty-One Claims***:    The Class Twenty-One Claims are impaired.  The Class Twenty-One Claimants will retain their interests in Debtor.  However, the Class Twenty-One Claimants may not take cash draws from Debtor except as provided in the Budgets and as necessary for the payment of income taxes.

**Article X.      Provisions for Interests of Debtor**

**Section 10.01 Class Twenty-Two Claims:  Interests of Debtor**

The Class Twenty-Two Claims are the claims or interests held by Debtor.  Debtor will retain its assets and will not be required to liquidate any of its assets except as provided in the Plan.  Additionally, Debtor will manage its affairs subject to the provisions of the Plan without the appointment of a trustee or other outside management or control.  The assets owned by Debtor will revest in Debtor upon the Effective Date.

///

**Article XI.    Means for Executing the Plan**

### Section 11.01  Debtor's Continued Operations

Debtor will continue to operate its business after confirmation of the Plan.

### Section 11.02  Available Cash to Fund Plan

Debtor will dedicate sufficient income generated from the operation of its business to fund the Plan.  Discussions regarding (a) the steps taken to improve the operation of the dairy, (b) the feasibility of the Plan, and (c) the assumptions contained in the Budgets are contained in the Disclosure Statement attached as Exhibit B.

**Article XII.    Continued Operation of Dairy Business**

### Section 12.01  Debtor's Operations

Debtor will manage its operations including, but not limited to, general dairy management, payment processes, and funds investment, including without limitation:

   a.    Debtor is authorized to employ partners, managers, agents, brokers, representatives and attorneys to carry out any activity authorized by this Plan;

   b.    Debtor is authorized to pay ordinary operating costs and current taxes without further order of the Court;

   c.    Debtor is authorized to execute a risk management strategy including entering futures and forward contracts, calls, puts, commodity contracts and similar risk management contracts and controls in the ordinary course of its business without further order of the court;

   d.    Debtor retains the right to prosecute all claims arising from any dispute involving Debtor or any property within its control;

   e.    Except as otherwise provided in the Plan, Debtor is authorized to distribute its property and the proceeds from any sale of its property to the creditors of Debtor and those entitled to receive such distribution under the terms of this Plan.

   f.    Debtor may, but is not required to, prosecute any claims against other entities including, but not limited to, any avoidance actions to recover fraudulent transfers or preferential payments.  Debtor will base its decision on whether to prosecute actions

described here on its business judgment in light of the cost of recovery, amount of potential recovery, and the strength of the case.

g.    Debtor may, but is not required to, object to any claim pursuant to the Plan, whether in the Chapter 11 Case or otherwise, and may pursue such litigation as is appropriate to resolve such disputes and objections.

h.    Debtor may, but is not required to, pursue any claim for monetary damages that Debtor determines are appropriate, against any person or entity.

**Section 12.02  Post-Confirmation Expenses**

Debtor will be entitled to expend funds reasonably necessary to carry out the terms of the Plan.  Professional Fee Claims will be paid only upon application to and approval of the Court except as provided in Section 1.01.  Expenses that can be paid in the ordinary course of business, including post-confirmation professional fees, will continue to be paid in the ordinary course of business.

**Article XIII.  Claims Handling**

**Section 13.01  Ownership and Transfer of Claims**

Allowed Claims of creditors may be transferred and assigned in accordance with Bankruptcy law.  However, each Distribution will be made to the Claimant of record on the date that is seven days before the date that the Distribution is made.  Each Distribution is final when the Distribution is made.  Any transferee or assignee of an Allowed Claim will not be entitled to payment from Debtor for Distributions that were paid to any previous holder of the Allowed Claim under the Plan.  Debtor is permitted to recognize and deal for all purposes with only those Claimants of record stated on the claims register maintained by the Court, or scheduled in the list of creditors filed with the Court under Bankruptcy Rule 1007 and not listed as disputed, contingent, or unliquidated as to amount, and to which no objection has been interposed.

**Section 13.02  Amendments to Claims**

In order for Debtor to settle disputes and otherwise implement the Plan, a proof of claim may be amended to increase or liquidate the amount or priority of such Claim after the Bar Date, but only as agreed upon by Debtor and the holder of such Claim, or as otherwise permitted by the

Court, the Bankruptcy Rules or applicable law. Without limiting the previous sentence in any manner, unless otherwise provided in the Plan, proofs of claim will not be filed or amended after Confirmation of the Plan unless the amendment is solely to decrease the amount or priority of the Claim. Any such new or amended Claim filed after the Confirmation of the Plan is disallowed in full and is expunged without any action by the Debtor.

### Section 13.03 Disputed Claims

Except as otherwise provided in the Plan, Debtor may object to the allowance of Claims filed with the Court if Debtor disputes liability, priority, or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections may be litigated to Final Order, or compromised, or withdrawn. Unless otherwise ordered by the Court, Debtor will file and serve all objections to Disputed Claims no later than the Objection Date, or such other date as may be approved by the Court.

At the time of the filing of the Plan, Debtor disputes the claims asserted by C.A. Vanderham & Sons Dairy for lease arrearages (Proofs of Claim No. 20 and 21), Lazy V Dairy, Four Corners Custom Farms, and Kasiner Farms.

**Kasiner Farms/Four Corners Custom Farms ("Kasiner Famrs"):** Debtor is a defendant and counter-claimant in *Kasiner Farms et al v. J&D Wilson and Sons Dairy et al* lawsuit pending in the Tulare County Superior Court, Case No. No. 12CECG00907. Litigation was stayed as to the Debtor upon the filing of the Chapter 11 case. Kasiner Farms filed a Proof of Claim No. 6 asserting a claim in the amount of $174,897.99. Kasiner Farms filed an amendment to Proof of Claim No. 6 reducing the claim to $100,000.00 as a result of a compromise between Debtor and Kasiner Farms. Debtor will file a motion to compromise to seek Court approval of the proposed agreement between Debtor and Kasiner Farms. Kasiner Farm's $100,000.00 claim will be treated as a Class Twenty Claim.

**C.A. Vanderham & Sons Dairy:** Debtor disputes the Proofs of Claim No. 20 and No. 21 filed by C.A. Vanderham & Sons Dairy ("Landlord") for potential lease arrearages ("the Arrearage Claims"). As stated above, Debtor intends to assume the Leases. Debtor and its

Landlord negotiated an agreement concerning the assumption of the Leases, as modified, and settling the disputes between the parties concerning the Arrearage Claims. Debtor filed its *Motion to Assume Unexpired Nonresidential Real Property Leases with Lessor, C.A. Vanderham & Sons Dairy, as Modified* [Docket No. 258] ("Motion to Assume Leases as Modified"). The Court denied the Motion to Assume Leases as Modified. Debtor intends to continue its negotiations with its Landlord and to assume the Leases.

**Lazy V Farms:** Debtor received two invoices dated December 5, 2013, from Lazy V Farms in the amount of $162,370.00 each for a total of $324,740.00. Lazy V Farms is controlled by Dick Vanderham, a partner of CA Vanderham & Sons Dairy. Debtor did not receive goods or services from Lazy V Farms that would justify such an invoice. Debtor believes that these invoices are for alleged unpaid rent under the lease agreements with CA Vanderham & Sons Dairy. Debtor disputes that it owes any money to Lazy V Farms. Lazy V Farms did not file a proof of claim. Debtor will object to any proof of claim filed by Lazy V Farms.

**B&L Farms and TCF Equipment Finance:** B&L Farms filed a UCC Financing Statement on May 5, 2009, alleging a dairy cattle supply lien against Debtor. Debtor disputes that it owes money to B&L Farms. B&L Farms did not file a proof of claim. Debtor will object to any proof of claim filed by B&L Farms. TCF Equipment Finance both filed a UCC Financing Statement on February 13, 2012 to secured repayment of an equipment lease between Debtor and TCF Finance. Debtor completed its leased payments to TCF Finance, by TCF Finance did not release its lien. TCF Finance did not file a proof of claim. Debtor will object to any proof of claim filed by TCF Finance.

**Section 13.04 Objection Date**

There will be no fixed Objection Date for any Claims other than the Class Seventeen and Class Twenty Claims. The Objection Date with respect to Class Seventeen Claims will be no later than 30 days after the Effective Date or such other date as may be approved by the Court. The Objection Date with respect to the Class Twenty Claims will be no later than 60 days after the Effective Date or such other date as may be approved by the Court.

///

**Section 13.05  Estimation of Claims**

Debtor or a Claimant may request that the Court estimate any contingent, unliquidated or Disputed Claim under Section 502(c).  Debtor or a Claimant may request that the Court estimate a Claim regardless of whether the Claim has been objected to by a party in interest.  Estimation of a Claim will not constitute the allowance of the estimated claim and Debtors reserve the right to object to the allowance of any estimated Claim.

**Section 13.06  Allowance of Disputed Claims**

When a Disputed Claim becomes, in whole or in part, an Allowed Claim, Debtor will distribute to the Claimant the Distributions the Claimant is then entitled to under the Plan. Such Distribution, if any, will be made on or after the date that the order or judgment of the Court allowing such Disputed Claim becomes a Final Order, or after amendment, but not more than thirty days thereafter.

**Article IVX.  Payments to Creditors Under the Plan**

**Section 14.01  Distributions**

There will be an initial Distribution and subsequent Distributions to creditors under the Plan.  Timing of such Distributions will be made as described under Articles I through VIII.

**Section 14.02  Method of Payment**

The method of payment will be at the election of Debtor, but may include, without limitation, bank check, business check, or wire transfer.

**Section 14.03  Means of Distribution**

Distributions by mail to holders of Allowed Claims will be made as follows:  (1) at the addresses set forth on the respective proofs of claim by such Claimants; (2) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related proof of claim; or (3) at the address designated in any written agreement between Debtor and such Claimants or so designated by order of the Court.

**Section 14.04  Holding of and Failure to Claim, Undeliverable Distributions**

All Distributions are to be made by Debtor to the holder of each Allowed Claim at the holder's address as described under section 13.03.  If any holder's Distribution is returned as

undeliverable, no further Distributions to such holder will be made unless and until Debtor is notified of such holder's then current address, at which time all required Distributions will be made to such Claimant.  Undeliverable Distributions will be held by Debtor until such Distributions are claimed, so long as they are claimed within ninety days following a Distribution. After 90 days, all unclaimed Distributions revert to Debtor, and the Claim of any Claimant or its successor with respect to the Distribution will be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**Article VX.    Voting**

**Section 15.01 Acceptance/Rejection Votes**

Debtor will request confirmation of the Plan under Section 1129(b) of the Code to the extent any Class impaired under the Plan and entitled to vote does not accept the Plan by the requisite statutory majority provided in Section 1126(c), or is deemed to have rejected the Plan.

**Section 15.02 Impaired Classes to Vote**

Each holder of a Claim in an impaired Class will be entitled to vote separately to accept or reject this Plan, unless such holder is deemed to accept or reject the Plan.

**Section 15.03 Acceptance by Class of Creditors**

An impaired Class of holders of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  A Class of holders of Claims will be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for the return of ballots.  Debtor requests Confirmation of the Plan under Sections 1129(a) and 1129(b).

**Article XVI.   Effect of Confirmation**

**Section 16.01 Terms Binding**

On the Effective Date, all provisions of this Plan will be binding upon Debtor, all Claimants, and all other individuals and entities who are affected by the Plan in any manner.

///

///

### Section 16.02  Discharge

On the Effective Date, all Claims against Debtor that exist upon Confirmation of the Plan will be discharged and all pre-petition defaults deemed cured in exchange for the payments required under the Plan.

### Section 16.03  Injunction

Claimants are permanently enjoined from commencing or continuing any action to collect, recover, or offset any released Claim as a personal liability of Debtor, to the fullest extent permitted by Sections 1141(d)(1) and 524 of the Code.

### Section 16.04  Preservation of Avoidance Actions Claims and Rights

On and after the Effective Date, Debtor will retain any avoidance actions, including any preference claims or fraudulent conveyance claims.  Debtor may also assert such avoidance actions in the context of defeating any Disputed Claim through an objection to the allowance of a Claim.  Except for the releases and waivers expressly stated in the Plan, nothing in the Plan waives the avoidance and other powers of Debtor under the Code or the Bankruptcy Rules.  Debtor retains after Confirmation and after the Effective Date, all powers granted by the Code and the Bankruptcy Rules, including but not limited to all claims held by a trustee or debtor in possession arising on or before the Effective Date.  Confirmation of the Plan does not release any Claim held by Debtor or the estate, unless the Plan or Confirmation Order specifically and unambiguously so provides.

### Section 16.05  Statutes of Limitation

All applicable statutes of limitations and extensions thereto, including but not limited to any applicable state law statute of limitations and Sections 108, 546, and 550 will remain in full force and effect and available to Debtor as if Debtor was a trustee in bankruptcy.

## Article XVII. Amendments or Modifications to the Plan

### Section 17.01  General Arrangements

The Plan may be amended or modified in the manner prescribed in Section 1127.  A holder of a Claim that has accepted or rejected this Plan will be deemed to have accepted or

rejected, as the case may be, the Plan as modified, unless, within applicable time periods, such holder changes its previous acceptance or rejection.

### Section 17.02  Amendment of the Plan

At any time before Confirmation of the Plan, Debtor may alter, amend, or modify the Plan under Section 1127(a); provided that such alteration, amendment, or modification does not materially and adversely affect the treatment and rights of the holders of Claims under this Plan. After the Confirmation of the Plan and before substantial consummation of the Plan as defined in Section 1101(2), Debtor may, under Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings will not materially and adversely affect the treatment of holders of Claims under the Plan; provided, that prior notice of such proceedings will be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.  At any time after Confirmation of the Plan, Debtor may modify the Plan so long as such modification is accomplished consistent with the Code.

### Section 17.03  Revocation or Withdrawal of the Plan

Debtor reserves the right to revoke or withdraw this Plan at any time before Confirmation of the Plan.

### Section 17.04  Reservation of Rights

Neither the filing of the Plan or Disclosure Statement, or provision contained in the Plan or in the Disclosure Statement, nor the taking of any action with respect to the Plan by any party in interest will (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and all such rights are specifically reserved until the Effective Date.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without this Chapter 11 Case involving Debtor or the estate, except with respect to Confirmation of the Plan.

# Article XVIII.  Miscellaneous Provisions

## Section 18.01 Jurisdiction of the Court

The Court will retain jurisdiction after confirmation of the Plan to the extent permitted by applicable law.  Any litigation involving primarily matters of state law will be prosecuted in the state court.

## Section 18.02 Taxes

Each holder of an Allowed Claim that has received a Distribution has sole responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit.  For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to unpaid accrued interest, then to the principal amount of such Claims unless provided otherwise with respect to a Class of Claims in the Plan.

## Section 18.03 Severability

If any provision of this Plan is determined to be unenforceable, the enforceability, operation, or effect of any other provision of this Plan is not affected.  So long as the Plan still fulfills its essential purpose, any unenforceable provision is severed from the Plan.

## Section 18.04 Successor and Assigns

The rights and obligations of any party in interest to this Plan are binding on, and inure to the benefit of, the successors and assigns of such party in interest.

## Section 18.05 Effectuating Documents; Further Transactions

Debtor is authorized and directed to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Confirmation order, and to take all actions necessary or appropriate to effectuate the provisions of this Plan. Debtor may engage counsel to assist in its duties, including counsel who may have previously represented Debtor.

## Section 18.06 Modification of Payment Terms

At any time after the Effective Date, Debtor may modify the treatment of any Allowed Claim, so long as the holder whose Allowed Claim is being adversely affected consents in writing.

**Section 18.07 De Minimis Distributions**

Notwithstanding anything to the contrary contained in the Plan, Debtor may choose at any time to pay in full the entire pro-rata amount that will become due under the Plan to any Class Thirteen Claimant for which the amount of monthly pro-rata payments is determined by Debtor to be unduly burdensome.

**Section 18.08 Incorporated Provisions to Reconcile with the Disclosure Statement**

The Plan and the Disclosure Statement should be reconciled and consistent with each other. However, the terms of the Plan supersede and will control any statements in the Disclosure Statement if the Plan and Disclosure Statement are inconsistent and cannot be reconciled.

**Article IXX.  Payment of Quarterly Fees and Post Confirmation Status Reports**

**Section 19.01 Payment of Quarterly Fees**

Debtor will pay Quarterly Fees to the United States Trustee after the Effective Date and until the Court enters an order closing the case. Debtor will pay the Quarterly Fees owed to the United States Trustee from income generated by the operation of its business and the payment of Quarterly Fees will not affect feasibility of the Plan.

**Section 19.02 Post-Confirmation Status Reports**

Debtor will file Post-confirmation Status Reports with the Bankruptcy Court one time every three months until the dismissal of the case, conversion of the case, or entry of a Final Decree closing the case. The Post-confirmation Status Reports will explain the progress made by Debtor toward substantial consummation of the Plan. A Post-confirmation Status Report will be filed with the Court for the quarter within which the Plan is confirmed. Subsequent Post-confirmation Status Reports will be filed at the expiration of each quarter thereafter until dismissal of the case, conversion of the case, or entry of a Final Decree closing the case. Post-confirmation Status Reports will be filed with the Court and served on the United States Trustee not later than the twentieth day of the month following the expiration of a reporting period. Post-confirmation Status Reports will be served on the United States Trustee not later than the day on which the report is filed with the Court. The Post-confirmation Status Reports will include information to enable the Court to determine:

a.       whether the order Confirming the Plan of Reorganization has become a Final
Order;

b.       whether deposits required by the Plan have been distributed;

c.       whether any property proposed by the Plan to be transferred has been transferred;

d.       whether the reorganized Debtor has assumed the business or management of
property dealt with under the Plan;

e.       whether payments under the Plan have been commenced;

f.       whether fees owed to the United States Trustee pursuant to 28 U.S.C. section 1930
have been paid to the date of the Post-confirmation Status Report; and

g.       whether all motions, contested matters, adversary proceedings, and other litigation
involving Debtor has been concluded.

**Article XX.    Definitions and Rules of Interpretation**

**Section 20.01  Definitions**

**"503(b)(9) Claim"** means an Allowed Claim for payment of an administrative expense of
a kind specified in Section 503(b)(9) and entitled to priority under Section 507(a)(2).

**"Administrative Claim"** means a Claim for payment of an administrative expense of a
kind specified in Section 503(b) and entitled to priority under Section 507(a)(2), including, but
not limited to, Professional Fee Claims filed on or before the Administrative Claims Bar Date.

**"Administrative Claims Bar Date"** means 30 days after the entry of the Order
confirming the Plan.

**"Allowed Claim"** means a claim (a) for which a proof of claim has been filed within the
period fixed by Bankruptcy Rule 3001 or Final Order of the Court or (b) scheduled in the list of
creditors filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed,
contingent, or unliquidated as to amount and to which no objection has been interposed.

**"Budgets"** means Debtor's Cash Flow Projections for 2014 through 2021 and
accompanying schedules that are attached to the Disclosure Statement as Exhibit "B."

**"Claim"** means any right to payment against Debtor in existence upon the Confirmation of the Plan, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, disputed, undisputed, legal, secured, or unsecured.

**"Claimant"** means the person or entity asserting, or capable of asserting, a Claim.

**"Class"** means any class into which Claims are classified pursuant to this Plan.

**"Code"** means Title 11 of the United States Code.

**"Confirmation"** means the entry of an order of the Court confirming the Plan.

**"Confirmation Date"** means the date of the entry of an order of the Court confirming the Plan.

**"Court"** means the United States Bankruptcy Court for the Eastern District of California.

**"Debtor"** means J&D Wilson and Sons Dairy, a California partnership.

**"Disputed Claims"** means claims for payment filed by individuals or entities seeking to be paid from assets of the estate that Debtor believes (a) are not owed, (b) are not owed in the amount of the claim filed, or (c) assert improper priority, and to which Debtor objects on or before the Objection Date.

**"Distribution"** means a payment or payments to the holder of an Allowed Claim as provided by the Plan.

**"Effective Date"** means 15 days after the Confirmation Order becomes a Final Order provided, however that the Effective Date will not occur if the Wells Fargo New Loan Documents are not approved in a form satisfactory to Wells Fargo and Debtor, or the FLCA New Loan Documents are not approved in a form that is acceptable to FLCA and Debtor.

**"FLCA"** means Farm Credit West, FLCA.

**"FLCA New Loan Documents"** means the documents and agreements (including, but not limited to, a credit agreement, promissory note and security agreement), in form and substance acceptable to FLCA and Debtor, to be entered into by and between FLCA and the Debtor pursuant to the treatment of the Class Five and Class Seven Claims under the terms of the Plan.

**"Final Decree and Order Closing the Chapter 11 Case"** means the Order of the Court determining that Debtor's estate has been fully administered and that the Plan has been substantially consummated, and closing the case.

**"Final Order"** means an order or judgment of the Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which the time to appeal has expired without such an appeal.

**"Landlord"** means C.A. Vanderham & Sons Dairy.

**"Objection Date"** means the date set by the Plan in Section 13.04 or by order of the Court setting the deadline for Debtor to file objections to any timely filed proof of claim filed by a Claimant.

**"PCA"** means Farm Credit West, PCA.

**"PCA New Loan Documents"** means the documents and agreements (including, but not limited to, a credit agreement, promissory note and security agreement), in form and substance acceptable to PCA and Debtor, to be entered into by and between PCA and the Debtor pursuant to the treatment of the Class Six Claims under the terms of the Plan.

**"Petition Date"** means February 7, 2014, the date on which Debtor commenced its Chapter 11 case, and, where relevant, the time of the filing of Debtor's Chapter 11 petition.

**"Plan"** means the Plan of Reorganization Dated September 3, 2014, as amended or modified in accordance with the Code.

**"Professional Fee Claims"** means an Administrative Claim of a professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred during the period from the Petition Date through the closing of the case.

**"Real Property"** means that certain real property owned by Debtor described as 894 acres of real property improved by a 160 acre dairy facility, and five wells located at 11720 W. Mt. Whitney, Riverdale, California.

**"Term of the Plan"** means that period of time from the Effective Date to the earlier of (a) the date that is five years after the Effective Date, or (b) the date on which the Class Twenty Claims are paid in full.

**"Wells Fargo New Loan Documents"** means the documents and agreements (including, but not limited to, a credit agreement, promissory note and security agreement), in form and substance acceptable to Wells Fargo and Debtor, to be entered into by and between Wells Fargo and the Debtor pursuant to the treatment of the Class Eight Claims under the terms of the Plan.

**"Wells Fargo Pre-Petition Loan Documents"** means that certain Credit Agreement by and between Debtor and Wells Fargo dated as of June 15, 2009, as amended and modified, and the notes, security agreements and other documents relating thereto.

### Section 20.02 Rules of Interpretation

Unless otherwise specified, all article, section, exhibit, or schedule references in this Plan are to the respective article in, section in, exhibit to, or schedule to the Plan, as the same may be amended, waived, or modified from time to time.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and any pronoun stated in the masculine, feminine or neuter gender will include the masculine, feminine and neuter gender. Captions and headings in the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof. Whenever the words "include," "includes" or "including" are used in this Plan, they will be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import.

References from or through any date mean from and including or through and including, respectively, unless otherwise specified.  Any references in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.

With respect to any reference in this Plan to a consent, approval, or acceptance by any party that will not unreasonably be withheld, or to an issue, agreement, order or other document (or the terms thereof) that will be reasonably acceptable to any such party, such consent, approval, or acceptance will not be unreasonably conditioned, delayed or withheld.

///

### Section 20.03  Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) apply.  In the event that any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a business day, then the making of such payment or Distribution, the performance of such act or the occurrence of such deadline, is deemed to be on the next succeeding business day without interest, but will be deemed to have been completed or to have occurred as of the required date.

### Section 20.04  References to Monetary Figures

All references in the Plan to monetary figures will refer to currency of the United States of America, unless otherwise expressly provided.

### Section 20.05  Exhibits; Schedules

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or schedule is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-schedule portion of the Plan will control.

The undersigned, on behalf of Debtor, submits and agrees to be bound by the terms of the Plan.

Date: September 3, 2014                J&D WILSON AND SONS DAIRY

By /s/ James L. Wilson
JAMES L. WILSON, Partner

Dated: September 3, 2014               KLEIN, DeNATALE, GOLDNER
                                       COOPER, ROSENLIEB & KIMBALL, LLP

By: /s/ Jacob L. Eaton
JACOB L. EATON
Attorneys for Debtor in Possession,
J&D WILSON AND SONS DAIRY

3DY5922.DOCX                   28                   PLAN OF REORGANIZATION

ORIGINAL